## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Civil Action No.

| | |
|---|---|
| **RICKY D. JONES** | |
| **Plaintiff,** | |
| **vs.** | **COMPLAINT** |
| **FIRST-CITIZENS BANK & TRUST COMPANY AND CENTRAL LOAN ADMINISTRATION & REPORTING A/K/A CENLAR FSB,** | **WITH DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

      **NOW COMES** Plaintiff, Ricky D. Jones, by and through counsel, and respectfully submits to this Court the following:

## JURISDICTION AND VENUE

1.  Jurisdiction is proper in this Court for Defendants' violations of both federal and state law which include: the North Carolina Debt Collection Act N.C. Gen. Stat. §75-50 *et seq*, North Carolina common law; and violations of the Real Estate Settlement Procedures Act 12 U.S.C. § 2605, 12 C.F.R. §§ 1024.35, 1024.38 and 1024.41.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims before the Court occurred in this District.

## PARTIES

3.  Plaintiff, Ricky D. Jones (hereinafter, "Mr. Jones") is a citizen and resident of Mecklenburg County, North Carolina.

4.  Defendants engaged in commerce in Mecklenburg County, North Carolina, during all times relevant to this complaint.

5. Defendant First Citizens Bank & Trust Company ("First Citizens") is a corporation that provides residential mortgage origination and loan servicing to borrowers in North Carolina and throughout the United States. It has a principal place of business at 239 Fayetteville Street, Raleigh, North Carolina 27601.

6. First Citizens transacts or has transacted business in North Carolina and throughout the United States.

7. Defendant Central Loan Administration & Reporting a/k/a Cenlar FSB ("Cenlar") is a corporation with a principal place of business at 425 Phillips Blvd, Ewing, New Jersey 08618.

8. Cenlar operates as a mortgage servicing company and transacts or has transacted business in North Carolina and throughout the United States.

9. At all times relevant to the subject matter of this Complaint, Cenlar was the agent for First Citizens pursuant to an agreement between the parties.

10. Upon information and belief, Cenlar's actions in violation of the statutes and common law as presented in this Complaint were committed within the scope of Cenlar's employment by First Citizens and in furtherance of First Citizen's business.

11. At all times relevant First Citizens was responsible for the acts and omissions of its agent, Cenlar.

12. Defendants, who will be collectively referred to throughout this Complaint as ("Defendants") are in the business of providing lending and other financial services to consumers and conduct business in Mecklenburg County, North Carolina.

13. Mr. Jones is a "consumer" as defined by the North Carolina Debt Collection Act ("NCDCA") at N.C. Gen. Stat. § 75-50(1) as "any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes."

2

14. The loan in this matter is a "federally related mortgage loan" as defined by the Real Estate Settlement Procedures Act of 1974 at 12 U.S.C. §2602(1), *et. seq.*, and 12 C.F.R. §1024.2(b).

15. Defendants are "servicers" as that term is defined as "a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)" pursuant to the Real Estate Settlement Procedures Act of 1974 at 12 U.S.C. § 2601(i)(2), *et.seq.*,12 C.F.R. §1024.2," and N.C. Gen. Stat. §53-244.030 (22).

16. The debt in this matter is a "debt" alleged to be owed as defined by the NCDCA at N.C. Gen. Stat. § 75-50(2).

17. The Defendants are "debt collectors" as defined by the NCDCA at N.C. Gen. Stat. § 75-50(3) as "any person engaging, directly or indirectly, in debt collection from a consumer."

18. At all times relevant to the subject matter of this Complaint, Defendants were involved in debt collection practices in or affecting commerce. N.C. Gen. Stat §§ 75-1.1 (a)(b), 75-50 (1-3).

19. The Defendants' unfair debt collection practices proximately caused injury to Mr. Jones. N.C. Gen. Stat §§ 75-1.1 (a)(b), 75-50 (1-3).

## FACTUAL ALLEGATIONS

20. This claim arises from the foreclosure sale of a home secured by a purchase money mortgage on March 18, 2019.

21. The parties entered into an agreement on March 27, 2008 for Mr. Jones to borrow $127,200.00 from First Citizens Bank for the purchase of a condominium ("Property") located at 5704 Bradford Lake Lane, Charlotte, North Carolina 28269.

22. The property was Mr. Jones's principal residence.

23. The loan was evidenced by a promissory note and secured by a Deed of Trust. (Exhibit 1).

3

24. At the beginning of 2014, certain regulations[1] requiring servicers to comply with specific procedures when processing borrowers' mortgage assistance applications went into effect.

25. These regulations recognize that a servicer has flexibility to establish its own requirements for the acceptance or denial of any loss mitigation option, but after a borrower has submitted a loss mitigation application which the servicer acknowledges as being "complete," a servicer is then obligated to adhere to 12 C.F.R. § 1024.41.

26. At all times relevant to the Complaint, Cenlar was the servicer of Mr. Jones's mortgage.

27. Mr. Jones expressed to Cenlar an interest in foreclosure avoidance and loss mitigation options in May 2018.

28. Cenlar requested documentation and/or information to determine whether Mr. Jones could qualify for any loss mitigation options.

29. Cenlar sent Mr. Jones correspondence on September 13, 2018 stating his application for assistance was incomplete and requested he submit additional documentation and/or information for review. (Exhibit 2).

30. Stacey J. Miller, a Default Analyst with First Citizens Bank sent Mr. Jones via certified mail on September 25, 2018 the initial Notice of Default pursuant to N.C. Gen. Stat. § 45-21.16(c)(5a). (Exhibit 3).

31. Poyner Spruill, the foreclosing law firm, sent a Demand for Payment of Indebtedness letter via certified mail to Mr. Jones on October 9, 2018. (Exhibit 4).

32. The letter requested Mr. Jones remit the full balance of the loan which was now due and owing or foreclosure proceedings would begin. (Exhibit 4).

---

[1] Plaintiff is suing under RESPA regulations, 12 C.F.R. § 1024.41.

4

33. Cenlar sent Mr. Jones correspondence on October 29, 2018 requesting he submit additional documents and/or information by November 12, 2018 to assist Cenlar in the determination of his qualifications for any loss mitigation options. (Exhibit 5).

34. Mr. Jones received a Notice of Hearing on or about November 15, 2018 that a foreclosure hearing had been scheduled for December 10, 2018 at 2:00 p.m. at the Mecklenburg County Courthouse. (Exhibit 6).

35. The initial foreclosure hearing date set for December 10, 2018 was continued and upon information and belief the next documented foreclosure hearing date on Mr. Jones's property was scheduled for January 14, 2019.

36. Cenlar contends that in November 2018 it sent Mr. Jones a letter alleging that because he had not submitted the requested additional documents and/ or information Cenlar had requested he was being denied any loss mitigation options. (Exhibit 7).

37. On December 5, 2018, Stacy Miller with First Citizens submitted an Affidavit to the court pursuant to N.C. Gen. Stat. §45-21.16C stating that Mr. Jones had responded but had failed to provide the required information and/or documents to resolve the foreclosure through loss mitigation efforts. (Exhibit 8).

38. On December 5, 2018, a foreclosure hearing had not taken place nor had a foreclosure sale date been scheduled at the time Ms. Miller's Affidavit was filed with the Court.

39. Mr. Jones timely sent the requested information and/or documents to Cenlar.

40. Cenlar sent correspondence dated December 27, 2018 to Mr. Jones signed by Cenlar's Loss Mitigation Department acknowledging they were now in receipt of a "complete" loss mitigation application. (Exhibit 9).

5

41. Cenlar's letter also stated that Mr. Jones should receive a response on whether Cenlar could offer Mr. Jones any loss mitigation options within 30 days. (Exhibit 9).

42. Under RESPA regulations, if no foreclosure sale has been scheduled as of the date a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale. 12 C.F.R. § 1024.41(b)(3).

43. The protections provided under 12 C.F.R. § 1024.41 that have been determined to apply to a borrower pursuant to 12 C.F.R. § 1024.41(b)(3) remain in effect thereafter, even if a foreclosure sale is later scheduled or rescheduled.

44. Mr. Jones reiterates that in his case a foreclosure hearing had not been held nor had a foreclosure sale date been scheduled when Cenlar's Loss Mitigation Department sent Mr. Jones the letter dated December 27, 2018 acknowledging they were in receipt of a "complete" loss mitigation application package. (Exhibit 9).

45. Cenlar's December 27, 2018 letter further stated "You are entitled to certain foreclosure protections as we have received your completed application. You may also be eligible for additional protections under State or Federal law." (Exhibit 9).

46. Pursuant to 12 C.F. R. § 1024.41(c)(1)(ii) if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then within 30 days of receiving the complete loss mitigation application a servicer shall: (i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if

6

applicable, that the borrower has a right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided in paragraph (h) of this section.

47. Mr. Jones believed the information provided in Cenlar's correspondence and relied on the content of the letter. (Exhibit 9).

48. Mr. Jones believed his application was under review for loss mitigation assistance and continued to believe he could possibly avoid the loss of his home by foreclosure.

49. On January 4, 2019, Cenlar's Loss Mitigation Department sent Mr. Jones a letter advising that as part of the review of his loss mitigation options Cenlar had ordered a property value assessment. (Exhibit 10).

50. Cenlar went on to state, the information from the assessment "may be used in the decision of your application." (Exhibit 10).

51. Mr. Jones received a copy of the appraisal dated December 30, 2018 and the property appraised at $138,000 based on an exterior-only inspection. (Exhibit 10).

52. The January 14, 2019 foreclosure hearing was rescheduled by the Defendants to February 4, 2019. (Exhibit 12).

53. On January 14, 2019 Cenlar's Loss Mitigation Department sent Mr. Jones a letter stating his Loss Mitigation Application had been reviewed but additional information and/or documentation was needed. (Exhibit 11).

54. The February 4, 2019 foreclosure hearing was rescheduled by the Defendants to February 18, 2019. (Exhibit 13).

55. Mr. Jones submitted the additional documentation or information that Cenlar requested by February 13, 2019.

56. Unbeknownst to Mr. Jones, the February 18, 2019 foreclosure hearing was not continued, and the Defendants appeared at the hearing and the Court scheduled the foreclosure sale date to take place on March 18, 2019. (Exhibit 14).

57. On February 21, 2019 Mr. Jones received a letter from Cenlar stating it had failed to receive the documents and/or information needed to process his loss mitigation application. (Exhibit 15).

58. The February 21, 2019 letter was not a denial letter pursuant to 12 C.F. R. § 1024.41. (Exhibit 15).

59. Mr. Jones was never offered any option to appeal. (Exhibit 15).

60. Under 12 C.F.R. § 1024.41 (c)(1)(i), servicers must comply with the written denial notice requirement for all complete loss mitigation applications submitted more than thirty-seven days before a scheduled foreclosure sale.

61. Defendants' actions of moving forward with and participating in a foreclosure hearing and setting a foreclosure sale date were prohibited acts pursuant to 12 C.F.R. § 1024.41(g) which provides when a servicer has acknowledged receipt of a "complete" loss mitigation application more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale unless a borrower has been given the proper notices as required by RESPA.

62. Defendants moved forward with the foreclosure hearing on February 18, 2019 and set the foreclosure sale date for March 18, 2019 without providing Mr. Jones with any of the notices required by RESPA 12 C.F.R. § 1024.41(g), after Cenlar had notified Mr. Jones they were in receipt of a "complete" loss mitigation application on December 27, 2018.

63. Mr. Jones should have been notified prior to February 18, 2019 of Cenlar's decision on the complete loss mitigation application before Cenlar moved forward with the foreclosure hearing.

64. The February 21, 2019 letter did not state that Mr. Jones had been denied any loss mitigation options, it stated his application was incomplete and he would need to remit $8,683.92 to avoid foreclosure. (Exhibit 15).

65. On February 27, 2019, Cenlar sent Mr. Jones correspondence stating it was again reviewing his loan for a loan modification or other foreclosure alternative. (Exhibit 16).

66. This letter went on to state that within 5 business days Cenlar would advise if any further documentation is needed, and "A decision is rendered within 30 days of receipt of a complete package. Foreclosure and collection activity will cease during the 30 days review period unless further information is required." (Exhibit 16).

67. Mr. Jones received a letter dated March 5, 2019 from Cenlar's Loss Mitigation Department again acknowledging Cenlar was in receipt of a "complete" loss mitigation application and as stated in the previous letter dated December 27, 2018, he was entitled to certain foreclosure protections. (Exhibit 17).

68. Mr. Jones believed and relied on the content of both the December 27, 2018 and March 5, 2019 letters from Cenlar acknowledging receipt of "complete" loss mitigation applications.

69. Mr. Jones believed Cenlar was evaluating him for loss mitigation options.

70. The Defendants were in fact "dual tracking" Mr. Jones by actively proceeding with foreclosure while simultaneously leading Mr. Jones to believe his application was being reviewed for alternatives to foreclosure.

71. "Dual-tracking" is prohibited behavior under RESPA 12 C.F.R. § 1024.41(g).

72. "A mortgage servicer that engages in dual tracking is "liable to the borrower" for "any actual damages" plus costs of the action and reasonable attorney fees." 12 U.S.C. § 2605(f)(1).

73. Defendants in this case, Cenlar as the servicer and First Citizens as the holder of the note, continued with foreclosure proceedings despite the fact Mr. Jones had submitted a complete loan modification application.

74. Mr. Jones never received any notices from Cenlar that he was not eligible for any loss mitigation options nor was he given any opportunity to appeal Cenlar's decision as required by RESPA. 12 C.F.R. § 1024.41 (c)(1)(ii).

75. Mr. Jones never rejected any loss mitigation offers made by Cenlar.

76. Mr. Jones provided Cenlar with all the documentation and information they requested and received two notices that Cenlar was in possession of a "complete" loss mitigation application.

77. Unbeknownst to Mr. Jones the foreclosure sale was held on March 18, 2019.

78. The foreclosure sale of Mr. Jones' home and the subsequent transfer of title from his name by the foreclosure trustee without following the procedures as outlined by 12 C.F.R. § 1024.41 demonstrates that all the correspondence sent to Mr. Jones from Cenlar's loss mitigation department was prepared without reasonable care.

79. Cenlar as servicer of Mr. Jones' mortgage owed Mr. Jones a duty of care outside the law of contracts.

80. Pursuant to N.C. Gen. Stat. §53-244.110(3) the Defendants have a duty under North Carolina law to act with reasonable skill, care, and diligence in the servicing of Mr. Jones's loan.

81. RESPA 12 C.F.R. §1024.38 (a) provides servicers shall maintain policies and procedures that are reasonably designed to achieve the objectives of: (b)(1) accessing and providing timely and accurate information and (b)(2) properly evaluating loss mitigation applications.

82. Mr. Jones had no reason not to believe the truth of the assertions made in the correspondence Cenlar sent to him stating his loss mitigation application was under review.

83. The Defendants' pattern and practice of filing for motions to continue the foreclosure hearing while simultaneously sending Mr. Jones correspondence advising he was being considered for loss mitigation assistance gave him no reason to not believe the validity of Cenlar's correspondence and actions at that time.

84. Mr. Jones relied to his detriment on the content of the two letters sent by Cenlar's Loss Mitigation Department dated December 27, 2018 and March 5, 2019 acknowledging Cenlar's receipt of "complete" loss mitigation applications and Cenlar's promise he was being reviewed for loss mitigation options.

85. Mr. Jones went out the front door to his condominium on April 9, 2019 and found a note taped to his door stating that an investment firm had purchased his home on March 18, 2019 at a foreclosure auction.

86. Mr. Jones immediately called Cenlar and spoke with a representative named Ms. Carter.

87. Mr. Jones asked for a supervisor to call him back.

88. Mr. Jones received a call back the following day on April 10, 2019 from Ms. Carter.

89. Ms. Carter told Mr. Jones the supervisor had directed her to call him back and let him know the letter dated March 5, 2019 was sent in error.

90. Mr. Jones sent Cenlar a Certified letter addressed to Anthony Renzi on April 10, 2019 advising that he had relied on Cenlar's acknowledgment of receipt of his "complete" loss mitigation applications to his detriment. (Exhibit 18).

91. Mr. Jones filed a complaint with the Consumer Financial Protection Bureau ("CFPB") on April 14, 2019. (Exhibit 19).

92. Cenlar sent notice of receipt of Notice of Error on April 18, 2019. (Exhibit 20).

93. The Office of the Comptroller of the Currency ("OCC") sent a letter dated April 23, 2019 to Mr. Jones acknowledging receipt of Mr. Jones's request for information and notice of error regarding the loss of his home to foreclosure and advised they had contacted Cenlar and he should receive a response. (Exhibit 21).

94. Cenlar sent Mr. Jones notice they had received the correspondence from CFPB and the OCC. (Exhibit 22).

95. Mr. Jones wrote another letter to Cenlar on May 8, 2019 requesting the status of Cenlar's investigation and describing the enormous financial pressure and stress of dealing with the loss of his home to foreclosure. (Exhibit 23).

96. Sherry Robinson, Executive Resolution Analyst with Cenlar sent a response letter to Mr. Jones on May 9, 2019. (Exhibit 7).

97. Cenlar advised Mr. Jones in the May 9, 2019 letter, that the letter Cenlar's Underwriting Department sent him on February 21, 2019 was a denial letter. (Exhibit 7) (Exhibit 15).

98. Cenlar went on to advise the March 5, 2019 letter advising Cenlar was in receipt of a "complete" loss mitigation application was sent in error. (Exhibit 7) (Exhibit 17).

99. Mr. Jones sent another letter to Cenlar dated June 14, 2019 outlining his ongoing discussions with a Cenlar employee Keith Jones and that he had anticipated some type of resolution because Keith Jones had advised Mr. Jones his file was being reviewed by Cenlar's Compliance Department. (Exhibit 24).

100. Mr. Jones is a 53-year-old male who suffers from anxiety, depression and mood disorders that were greatly exacerbated by the Defendants' actions.

101. Mr. Jones has suffered statutory as well as actual damages proximately caused by the Defendants' violations of RESPA 12 C.F.R. § 1024.41.

102. Defendants falsely represented they had the right and authority to foreclose by non-judicial means on February 18, 2019 and to hold the actual foreclosure sale on March 18, 2019 in violation of N.C. Gen. Stat. § 75-54(4) and other sections of the NCDCA.

103. Defendants moved forward with an action that at the time was not permitted by federal or North Carolina state law. N.C. Gen. Stat. § 75-51(8).

104. Cenlar's letters dated December 27, 2018 and March 5, 2019 were false statements that lead Mr. Jones to falsely believe he was being considered for loss mitigation options.

105. Cenlar sending Mr. Jones two letters stating it had received a "complete" loss mitigation application and that Cenlar was reviewing Mr. Jones for loss mitigation options were false statements that were reasonably calculated to deceive, made with the intent to deceive, which did deceive and resulted in damages to Mr. Jones.

106. Mr. Jones served on the board of his Homeowners Association at his condominium complex and has been embarrassed and humiliated by the loss of his home.

107. Mr. Jones has shown good will, yet he and other homeowners across the state of North Carolina and the nation have fallen victim to negligent mortgage servicing and accounting practices that have left Mr. Jones with the wrongful loss of his home.

108. These practices are compounded when homeowners, like Mr. Jones, try in good faith to resolve the situation to no avail.

109. The Defendants have failed to act in good faith and have ignored the serious and material issues and willfully blinded themselves to the true status of the mortgage loan.

110. The Defendants have knowingly and willfully misrepresented, misstated, and/or omitted the true facts concerning the actual status of Mr. Jones's loan and the foreclosure process.

111. The Defendants have placed their interest above that of Mr. Jones and unfairly and deceptively ignored their statutory and contractual duties including those that were agreed to as part of their license to legally operate in the State of North Carolina.

112. Mr. Jones recognizes that nothing in Section 1024.41 mandates that a servicer must offer a borrower any loss mitigation options, however, a servicer is obligated to follow the procedures as outlined in 12 C.F.R. § 1024.41 upon receipt of a "complete" loss mitigation application received 37 days before a foreclosure sale date.

113. Borrowers have the right to seek remedies when the servicer fails to conduct an evaluation in accordance with the procedural requirements as expressly stated in section 1024.41(a) pursuant to 6(f) of RESPA (12 U.S.C. 2605(f)).

114. Mr. Jones has been irreparably harmed because of the Defendants' errors and general mishandling of his mortgage loan.


**FIRST CAUSE OF ACTION**
**Negligent Servicing**

115. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein**.**

116. Defendants were negligent in the servicing of Mr. Jones's mortgage loan.

117. N.C. Gen. Stat. §53-244.110 lists the duties required of a "mortgage servicer engaged in the mortgage business."

118. N.C. Gen. Stat. § 53-244.111, proscribes specific acts related to residential mortgage loan transactions and charges Defendants with a duty of care.

14

119. Mr. Jones acknowledges that he does not have a private right of action under the North Carolina SAFE Act.

120. For the Defendants however to do business in North Carolina as a mortgage lender and servicer, they volunteered and agreed as a condition of their license to abide by the provisions of North Carolina SAFE Act.

121. The North Carolina Court of Appeals ruled in *Guyton v. FM Lending Servs., Inc.*, 199 N.C. App 30, 681 S.E.2d 465 (2009) that North Carolina's Mortgage Lending Act-the predecessor statute to the SAFE Act—could serve as the source of legal duty owed by a lender to a borrower for purposes of a negligence claim.

122. Defendants are "servicers" in North Carolina as that term is defined pursuant to RESPA 12 U.S.C. § 2601, *et.seq.*, and 12 U.S.C. § 1024.2.

123. N.C. Gen. Stat. §53-244.110(3) provides Defendants have a duty under North Carolina law to act with reasonable skill, care, and diligence in the servicing of Mr. Jones's loan.

124. Defendants have acted negligently in servicing Mr. Jones's loan by foreclosing on his home without providing him with the proper notices after receipt of a "complete" loss mitigation application as outlined in 12 C.F.R. 1024.41.

125. Defendants breached their duties of reasonable skill, care, and diligence in the servicing of Mr. Jones's loan.

126. Defendants' actions are the proximate cause of Mr. Jones's injuries and Defendants should have foreseen that the Mr. Jones's injuries were probable under the circumstances.

127. Mr. Jones has suffered damages as a proximate result of the negligent acts and omissions of the Defendants as described in the above Complaint, and he requests the Court for judgment in favor of himself and against the Defendants for their negligence in the sum of

his actual damages (including the value of his home), costs and attorney's fees incurred by Mr. Jones; and grant Mr. Jones such other and further relief as this court finds necessary and proper.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation

128. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

129. Cenlar sent Mr. Jones two letters, one dated December 27, 2018 and the other letter dated March 5, 2019, both stating "the application appears complete and no further information is needed at this time. You are entitled to certain foreclosure protections under State or Federal Law." (Exhibit 9) (Exhibit 17).

130. These letters were both signed by the Loss Mitigation Department of Cenlar.

131. Mr. Jones justifiably relied to his detriment that he was being reviewed for loss mitigation options and that he was entitled to certain foreclosure protections under State and Federal Law because Cenlar had acknowledged receipt of a completed application from him.

132. In this case, a foreclosure hearing had not been held nor had a foreclosure sale date been scheduled when Cenlar sent Mr. Jones the December 27, 2018 letter acknowledging they were in receipt of a "complete" loss mitigation application. (Exhibit 9).

133. Cenlar's December 27, 2018 letter further stated "You are entitled to certain foreclosure protections as we have received your completed application. You may also be eligible for additional protections under State or Federal law." (Exhibit 9).

134. Mr. Jones believed the information provided in Cenlar's correspondence and relied on the content of the letter that foreclosure proceedings would not take place while his application was being reviewed. (Exhibit 9).

16

135. Mr. Jones believed his application was under review for loss mitigation assistance and continued to believe in the possible avoidance of the foreclosure of his home.

136. Mr. Jones believed and relied on the contents of the letter when it stated he would receive a response from Cenlar within 30 days.

137. Unbeknownst to Mr. Jones, the February 18, 2019 foreclosure hearing was held, and a foreclosure sale date was scheduled for March 18, 2019. (Exhibit 14).

138. Defendants moved forward with the foreclosure hearing on February 18, 2019 and set the foreclosure sale date for March 18, 2019 without providing Mr. Jones with any of the notices as required by RESPA 12 C.F.R. § 1024.41(g).

139. On March 5, 2019 Mr. Jones again received correspondence from Cenlar's Loss Mitigation Department that his loss mitigation application was "complete" and he was entitled to certain foreclosure protections. (Exhibit 17).

140. Mr. Jones again believed and relied on the contact of Cenlar's correspondence.

141. Mr. Jones was deprived of the opportunity to pursue any other alternatives to foreclosure because he believed Cenlar was evaluating him for possible loss mitigation options.

142. Pursuant to N.C. Gen. Stat. §53-244.110(3) the Defendants have a duty under North Carolina law to act with reasonable skill, care, and diligence in the servicing of Mr. Jones's loan.

143. Defendants' letters dated December 27, 2018 and March 5, 2019 advising Mr. Jones they were in receipt of a "complete" application and were evaluating him for loss mitigation options led him to believe he was protected from foreclosure were false representations or concealment of a material facts.

144. Defendants have failed to act responsibly in the management of Mr. Jones's mortgage loan, and they have failed to act in the best interest of Mr. Jones in their dealings with him.

145. Damages continue to flow from Mr. Jones's reliance upon the Defendants' false promises and concealment of material facts as outlined above.

146. Defendants have made multiple misrepresentations that the Defendants knew or should have known were false that were made with the intent to induce Mr. Jones to act in reliance on said representations as alleged herein, or with the expectation that Mr. Jones would so act.

147. At the time the misrepresentations were made by the Defendants, Mr. Jones was ignorant of the falsity of Defendants' misrepresentations and believed them to be true.

148. In reasonable and justifiable reliance on such misrepresentations, Mr. Jones was induced to, and in fact did, take certain actions to his detriment including, but not limited to, not pursuing other alternatives to foreclosure.

149. As a direct, foreseeable, and proximate result of Defendants' wrongful actions alleged herein, Mr. Jones has been damaged in an amount to be determined according to proof at the time of trial (including the value of his home), in addition to equitable and/or injunctive relief, as specified in the prayer and as alleged herein.

## THIRD CAUSE OF ACTION
### Violation of the Real Estate Settlement Procedures Act
### 12 U.S.C. § 2605, 12 C.F.R.§ 1024.35, 12 C.F.R. § 1024.38, and 12 C.F.R. § 1024.41

150. The allegations set forth in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

151. Mr. Jones sent Qualified Written Requests ("QWR") to Defendants requesting an accounting of his mortgage loan.

152. Defendants were required to provide a substantive response within 30 days of receipt of a QWR. See 12 U.S.C. § 2605(e)(2).

153. Defendants failed to substantively respond to Plaintiff's QWRs.

154. Upon information and belief, the Defendants have a pattern and practice of noncompliance with the requirements of 12 U.S.C. § 2605 for borrowers like Mr. Jones as well as a failure to apologize for its errors.

155. This belief is based on Mr. Jones's own experience with the Defendants and, upon information and belief, Defendants have been involved in many lawsuits for similar RESPA violations.

156. Under the federal mortgage servicing regulations, the Defendants are prohibited from actively pursuing foreclosure while simultaneously considering Mr. Jones for loss mitigation options after an acknowledged receipt of a "complete" loss mitigation application.

157. The "dual-tracking" described in the previous paragraph is prohibited. 12 C.F.R. § 1024.41(g)

158. 12. C.F.R. § 1024.41 (f)(1) provides "if a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before the sale, a servicer shall not move for foreclosure judgment or order of sale or conduct a foreclosure sale, unless:

> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation options;
>
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

159. Defendants held a foreclosure hearing on February 18, 2019 and sold Mr. Jones's house on March 18, 2019 without carrying out any of the above required steps.

160. Mr. Jones respectfully requests the Court to enter judgment in favor of him and against the Defendants in accordance with 12 U.S.C. § 2605(f) and implementing RESPA regulations, in the sum of his actual damages (including the value of his home), postage and costs for money orders, emotional distress, and in the case of a pattern or practice of noncompliance statutory damages in the sum of $2,000 for each violation, costs and attorney's fees incurred by Mr.

Jones; and grant Mr. Jones such other and further relief as this Court finds necessary and proper.

## FOURTH CAUSE OF ACTION
### North Carolina Debt Collection Act N.C. Gen. Stat. § 75-50 *et seq*

161. The allegations set forth in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

162. North Carolina law prohibits a debt collector from "threatening to take any action not permitted by law." N.C. Gen. Stat. § 75-51(8).

163. North Carolina law prohibits a debt collector from "falsely representing the character, extent, or amount of a debt against a consumer or its status in any legal proceeding." N.C. Gen. Stat. § 75-54(4).

164. North Carolina law prohibits a debt collector from "falsely representing the creditor's rights or intentions." N.C. Gen. Stat. § 75-54(4).

165. The Defendants sent Mr. Jones acknowledgement of receipt of a completed loss mitigation application before the parties had participated in a foreclosure hearing and prior to a foreclosure sale date having been set.

166. Defendants continued to "dual track" Mr. Jones and moved forward with the foreclosure hearing and sale both prohibited acts under RESPA and N.C. Gen. Stat. § 75-51(8).

167. The Defendants have falsely and by fraudulent, deceptive or misleading representations led Mr. Jones to believe he was being considered for loss mitigation options for the potential avoidance of foreclosure while selling his home out from under him in violation of N.C. Gen. Stat. §75-54.

168. The Defendants have attempted to collect a debt by unconscionable means by selling Mr. Jones's home at a foreclosure sale while at the same time telling him it was protected from foreclosure by state and federal law in violation of N.C. Gen. Stat. §75-55.

169. The Defendants' actions described above have proximately caused humiliation, embarrassment, emotional and financial distress (including the loss of his home), and other mental suffering to Plaintiff.

170. As a result of the Defendants' violations of the North Carolina Debt Collection Act, Mr. Jones is entitled to actual damages and to statutory damages in an amount not less than $500.00 but no greater than $4,000.00 per violation pursuant to N.C. Gen. Stat. §75-56; and, reasonable attorney's fees and costs pursuant to N.C. Gen. Stat. §75-16.

171. The above violations of the NCDCA constitute unfair and deceptive acts or practices proscribed in N.C. Gen. Stat. § 75-1.1 and entitle Mr. Jones to punitive and treble damages in addition to any other damages suffered.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully request the following relief from this Court:

1. Award Plaintiff actual damages and compensatory damages for negligence and negligent misrepresentation;

2. Award Plaintiff actual damages in an amount to be determined at trial and statutory damages in the sum of $2,000.00, costs and reasonable attorney's fees incurred by Plaintiff pursuant to violations of the Real Estate Settlement Procedures Act alleged herein;

3. Award Plaintiff actual damages in an amount to be determined at trial, $4000 in statutory damages per violation, and punitive damages pursuant to the violations of N.C. Gen. Stat. § 75-50, *et. seq.*, alleged herein;

4. That Plaintiff have and recover of the Defendants the further sum more than Twenty-Five Thousand and No/100 ($25,000.00) as punitive damages;

5. Costs and reasonable attorney's fees pursuant to N.C. Gen. Stat. §75-16 and §75-1.1;

6. Award Plaintiff the costs of suit, any discretionary costs as may be allowable by law, pre-judgment, and post-judgment interest from each Defendant.

7. Granting Plaintiff, a trial by jury to all issues triable.

8. Award Plaintiff treble damages if by law allowed; and

9. Granting such other and further relief as to the Court may seem just, equitable and proper.

Respectfully submitted this the 12th day of August 2020.

**COLLUM & PERRY, PLLC**

**_/s/ Stacy L. Williams_**
Stacy L. Williams, Of Counsel
NC State Bar No.: 26874
109 West Statesville Avenue
Post Office Box 1739
Mooresville, NC 28115
Telephone: (704) 663-4187
Email: stacy@collumperry.com
*Attorney for Plaintiff*