UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| RICKY D. JONES, | ) |
| Plaintiff, | ) C/A No. 3:20-cv-00445 |
| vs. | ) |
| FIRST-CITIZENS BANK & TRUST COMPANY AND CENTRAL LOAN ADMINISTRATION & REPORTING A/K/A CENLAR FSB, | ) |
| Defendants. | ) |

## CENLAR FSB'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, Cenlar FSB ("Cenlar"), respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment, and states as follows:

### INTRODUCTION

This dispute arises out of the lawful foreclosure of Plaintiff's residence after he defaulted on his mortgage loan by failing to make the required monthly payments. The foreclosure was conducted pursuant to North Carolina law following entry of an order by the Mecklenburg Clerk of Superior Court, which found that Plaintiff was in default of his obligations on the loan and that the mortgagee, First-Citizens Bank & Trust Company ("First Citizens"), was entitled to foreclose. Plaintiff nevertheless argues that he is entitled to damages arising from the foreclosure based on the allegation that Cenlar failed to properly evaluate him for a loan modification prior to the foreclosure sale. Although Plaintiff admits he received prior notice of the foreclosure sale date, he claims that he was led to believe the foreclosure sale would not go forward based on a letter he

1

received from Cenlar after he submitted an application for a loan modification. Of course, the letter does not say that the foreclosure sale was canceled.

Nonetheless, on the basis of these allegations, Plaintiff asserts causes of action for negligence, negligent misrepresentation, and violations of the Real Estate Settlement Procedures Act ("RESPA") and the North Carolina Debt Collection Act ("NC Debt Collection Act"). As discussed below, Plaintiff cannot meet the elements of these claims, and Cenlar is entitled to summary judgment on both the individual causes of action and Plaintiff's damages as a matter of law.

Plaintiff cannot show that his alleged damages for emotional distress were caused by the foreclosure, where he has suffered from severe depression and anxiety for years before his home was foreclosed and his medical diagnosis has not changed since the foreclosure. Nor can Plaintiff show any other damages because the foreclosure does not arise from Cenlar's actions, but instead from Plaintiff's default on his loan payments as recognized by the Clerk of Superior Court's order. Plaintiff is not entitled to an award of punitive damages because he has not alleged any "willful or wanton" conduct by Cenlar meeting the standard for such relief and because such damages cannot be awarded on the basis of vicarious liability under North Carolina law.

Plaintiff's individual claims fail also. Cenlar was not required to evaluate Plaintiff for a loan modification under RESPA because Plaintiff never submitted a complete loss mitigation application for review within the meaning of 12 CFR § 1024.41. Plaintiff's negligent misrepresentation claim fails because the statements purportedly comprising the misrepresentation are, at best, a promise of future conduct and are not actionable as a misrepresentation of existing fact. Plaintiff's claim under the NC Debt Collection Act fails because Cenlar's alleged acts in connection with Plaintiff's loss mitigation application do not involve the "collection" of a "debt"

2

within the meaning of the Act. Cenlar is therefore entitled to summary judgment as to each of Plaintiff's claims and as to Plaintiff's asserted damages.

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In considering the motion, the court views all evidence in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The moving party bears the initial burden of informing the district court of the basis for its motion, and identifying the matters as to which it believes there to be an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden on the moving party may be discharged by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the movant has met the initial burden, the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (*quoting* Fed.R.Civ.P. 56(e)). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment is proper. *Id.* at 249–50.

## STATEMENT OF FACTS

In 2003 (15 years before the foreclosure), Plaintiff was diagnosed with severe depression and anxiety. (*See* **Exhibit 1**, Plaintiff's Responses to Cenlar's Interrogatories, No. 10.) Based on these conditions, in 2006 (12 years before the foreclosure), Plaintiff was deemed 100% disabled by the Social Security Administration. *See id.*

On March 27, 2008, Plaintiff executed a promissory note ("Note") in the amount of $127,200.00 payable to First Citizens. *See* **Exhibit 2**, Declaration of Diane McCormick ("Affidavit") ¶ 8. The Note provided for monthly principal and interest payments of $793.57 and an interest rate of 6.375%. To further secure payment of the Note, Plaintiff also executed a deed of trust ("Deed of Trust") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for First Citizens and its successors and assigns encumbering the real property located at 5704 Bradford Lake Lane, Charlotte, North Carolina 28269 ("Property"). *See id.* at ¶ 9.

On July 5, 2010, Plaintiff signed a loan modification agreement ("Modification") with prior servicer CitiMortgage, Inc. The Modification temporarily reduced Plaintiff's principal & interest payment and interest rate to $396.33 and 2.000%, respectively, with subsequent step-rate increases between 2010 and 2018, culminating in a permanent reduction of the principal and interest payment and interest rate to $589.74 and 4.875%, respectively, as of June 1, 2018. *See id*. at ¶ 10 and **Exhibit 2-C**.

Cenlar began servicing Plaintiff's loan in 2013. First Citizens was the owner of Plaintiff's loan and beneficiary of the Deed of Trust throughout the dates of Cenlar's servicing. *See id.* at ¶ 11.

On October 28, 2016 (more than 2 years before the foreclosure), Plaintiff's treating psychiatrist, Dr. Michael Christo, diagnosed him with "severe episode of recurrent major depressive disorder without psychotic features." (Christo Dep. 43:2-14.)[1] This diagnosis has not changed since 2016. (Christo Dep. 71:2-12; 73:18-23.)

---

[1] Because Dr. Christo's deposition reveals certain confidential communications between Plaintiff and his psychiatrist and other confidential medical information, Plaintiff has designated the transcript of the deposition as "Confidential" under the Court's Protective Order in this action. Accordingly, the transcript of Dr. Christo's deposition is being separately filed with a Motion to Seal.

4

Between January 19, 2018 and March 16, 2018, Plaintiff made three payments by telephone that were returned for insufficient funds or otherwise dishonored. Following the return of these payments, Plaintiff's account was more than 90 days delinquent. *See* **Exhibit 2**, Affidavit at ¶ 12.

On or around September 10, 2018, Cenlar received an application from Plaintiff seeking loss mitigation assistance as an alternative to foreclosure. *See id*. at ¶13. Cenlar wrote Plaintiff on September 13 and again on October 29, 2018, advising Plaintiff that additional documents were needed in support of his application, including updated bank statements, proof of government assistance or insurance benefits, an updated homeowners association statement, and signed and dated federal income tax returns. *See id*. Plaintiff was requested to provide these documents no later than November 13, 2021. However, Plaintiff failed to provide the requested documents by that date. *See id*. at ¶ 14.

On November 15, 2018, John W. Fletcher, III as substitute trustee for the Deed of Trust ("Substitute Trustee"), through counsel, commenced a foreclosure special proceeding by filing a Notice of Hearing On Foreclosure of Deed of Trust ("Notice of Hearing") in the Mecklenburg County Superior Court under Case No. 18-SP-03713. *See* **Exhibit 3**, Notice of Hearing. The Notice of Hearing advised that the loan debt had been accelerated and that First Citizens had instructed the Substitute Trustee to proceed with foreclosure due to Plaintiff's failure to make principal and interest payments required by the Note and Deed of Trust. *See id.* It further advised Plaintiff that he had the right to appear at the foreclosure hearing and contest the evidence regarding Plaintiff's default or otherwise show cause why a foreclosure sale should not be permitted. *See id.*

On November 16, 2018, Cenlar sent a letter to Plaintiff, notifying him that his loss mitigation application would not be reviewed due to failure to provide all required supporting documents. *See* Exhibit 2, Affidavit at ¶ 15. Following the initial rejection of Plaintiff's application as incomplete, Plaintiff submitted additional documents in support of his request for loss mitigation assistance. *See id.* at 16. On December 27, 2018, Cenlar wrote Plaintiff and notified him that his application appeared to be facially complete and would be reviewed within 30 days. *See id.* Cenlar's notice advised Plaintiff that additional information or documents might be required at a future date, however. *See id.*

On January 14, 2019, Cenlar wrote Plaintiff and advised that additional documents were needed in support of his application, including a signed and dated First Citizens financial form, all pages of Plaintiff's updated bank statements, and a letter of explanation regarding income appearing on Plaintiff's statements and application. *See id.* at ¶ 17. Cenlar requested that Plaintiff return the additional documents no later than February 13, 2021. *See id*. However, Plaintiff did not provide all required documents by that date, including the First Citizens financial form. *See id.* at ¶ 18.

After several continuances in the foreclosure proceeding, on February 18, 2019, the Mecklenburg County Clerk of Superior Court conducted a foreclosure hearing pursuant to N.C.G.S. § 45-21.16. The Clerk entered its Findings and Order, finding that First Citizens was the holder of a valid debt, that Plaintiff was in default under the terms the Note and Deed of Trust, that the notice of the hearing had been properly served, and that all other requisites for foreclosure had been met. *See* **Exhibit 4**, Clerk's Findings and Order. In accordance with these findings, the Clerk held that "[t]he Trustee, or any other trustee as substituted or appointed by the Beneficiary, possesses the right to foreclose under the terms of the Deed of Trust in accordance with Chapter

45, Article 2A of the North Carolina General Statutes . . . ." *See id*. Plaintiff did not appeal from the Clerk's order.

On February 19, 2019, counsel for the Substitute Trustee sent a Notice of Foreclosure Sale to Plaintiff by U.S. Mail, stating that the Property would be sold on March 18, 2019. *See* **Exhibits 5** and **6**, Notice of Foreclosure Sale and Exhibits and Trustee's Affidavit of Service. The Notice of Foreclosure Sale was also posted on the Property and published in a newspaper of general circulation in Mecklenburg County. *See id*. Plaintiff has admitted that he received the Notice of Foreclosure Sale. *See* **Exhibit 7**, Excerpt from Ricky Jones Deposition Transcript at 67:13-68:2.

On February 21, 2019, Cenlar wrote Plaintiff and advised him that his loss mitigation application would not be reviewed due to failure to provide all required supporting documents. *See* Affidavit at ¶ 19.

On February 27, 2019, less than 37 days prior to the noticed foreclosure sale, Cenlar received a new loss mitigation application from Plaintiff. *See* Exhibit 2, Affidavit at ¶ 20. On March 5, 2019, Cenlar sent a notice advising Plaintiff that his application appeared to be facially complete and would be reviewed within 30 days. *See id*. Tracking the language under 12 CFR § 1024.41(c)(3)(i), Cenlar's notice stated that "[y]ou are entitled to certain foreclosure protections as we have received your completed application." *See id*. and **Exhibit 2-L**. Cenlar's letter did not reference the March 18, 2021 foreclosure sale of which Plaintiff had been notified by the Substitute Trustee, nor did it promise that the foreclosure sale would be canceled or postponed. *See id*.

On March 18, 2019, the Property was foreclosed and sold by the Substitute Trustee to Carolinas Properties, LLC as the high bidder at the sale. The Substitute Trustee issued a deed to the purchaser, which was recorded April 29, 2019, in Book 33464, Page 229 of the Mecklenburg County Registry.

The corporate representative for First Citizens has testified that if Cenlar had obtained a complete application from Plaintiff and submitted it for First Citizen's review in 2019, Plaintiff would not have qualified for a loan modification under First Citizens' guidelines. (See **Exhibit 8**, Bostic Dep. 25: 17-21.)

**ARGUMENT**

**I.     Plaintiff cannot recover damages for his alleged emotional distress because Plaintiff cannot show that he has suffered a demonstrable emotional injury caused by Cenlar**

Discovery in this case has shown that Plaintiff's alleged injuries long predate the foreclosure. Contrary to Plaintiff's allegations, the record does not show any demonstrable worsening of his mental health as a result of the events that are the subject of this lawsuit.

Under North Carolina law, "a plaintiff does not have a remedy for garden variety anxiety or concern, but only for *severe* distress." *Pacheco v. Rogers & Breece, Inc.*, 157 N.C. App. 445, 449, 579 S.E.2d 505, 508 (2003) (emphasis original). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. . . . It is for the court to determine whether on the evidence severe emotional distress can be found." *Id.* at 449, 579 S.E.2d at 508. "'Severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics & Gynecology Assocs.*, P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). "Temporary anxiety," on the other hand, does not qualify as severe emotional distress. *Ruark Obstetrics*, 327 N.C. at 303-04, 395 S.E.2d at 97; *Collins v. Chem. Coatings, Inc.*, No. 5:07CV116, 2010 WL 1404619, at *7 (W.D.N.C. Mar. 31, 2010)

("Mere fright or temporary anxiety do not qualify as severe emotional distress." (internal quotations omitted)).

The Fourth Circuit has warned that emotional distress claims are "fraught with vagueness and speculation" and are "easily susceptible to fictitious and trivial claims." *Ross v. F.D.I.C.*, 625 F.3d 808, 818 (4th Cir. 2010) (*quoting Price v. City of Charlotte*, 93, F.3d 1241, 1250 (4th Cir. 1996)). Accordingly, "[a]n award of actual damages for emotional distress may not be made on guess and speculation, but must have adequate competent evidence to support it." *Crawford v. Coll. Life Ins. Co. of Am.*, 831 F.2d 1057 (Table), 1987 WL 38792, at *4 (4th Cir. 1987). Testimony must "establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Bryant v. Aiken Reg'l Med. Centers, Inc.* 333 F.3d 536, 546-47 (4th Cir. 2003). The plaintiff must also show a causal connection between the injury and the actions of the defendant. *See Price*, 93 F.3d at 1251. "[P]roof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard against raw speculation by the fact-finder." *Sakaria v. Trans World Airlines,* 8 F.3d 164, 173 (4th Cir. 1993).

Due to the foregoing concerns, courts in the Fourth Circuit have carefully scrutinized emotional distress claims that are not corroborated by the medical record. In *Ross*, the Fourth Circuit found that the defendant was entitled to summary judgment where the medical history did not show that the plaintiff reported the defendant's actions to her physicians and her emotional distress claim was supported only by her own "conclusory statements." *Id.*; *see also Hirapetian v. City of Charlotte*, No. 3:10-CV-00209, 2011 WL 2975673, at *5 (W.D.N.C. July 21, 2011) (granting summary judgment on intentional and negligent infliction of emotional distress claims where Plaintiff failed to offer medical documentation or other evidence showing severe emotional distress).

9

Summary judgment may also be proper where a plaintiff fails to distinguish his alleged injuries from a pre-existing emotional condition. In *Faulkner v. Tyco Elecs. Corp.*, the Court found that a plaintiff's past history of depression and anxiety negated a causal connection with the defendant's actions where the plaintiff "had problems with depression and anxiety for a number of years prior to her termination" and where "[n]othing in her deposition or elsewhere in the record indicates that these pre-existing conditions worsened as a result of her termination." 552 F. Supp. 2d 546, 558 (M.D.N.C. 2008).

Plaintiff admits in his interrogatory responses that he was "diagnosed with Severe Depression/Anxiety in 2003 and declared fully disabled by Social Security Disability in 2006." (**Exhibit 1**, Plaintiff's Responses to Cenlar's Interrogatories # 10.) Although Plaintiff claims that the actions of the Defendants have greatly exacerbated his pre-existing emotional condition, this is not borne out by his medical records. The deposition of Dr. Michael Christo, Plaintiff's treating psychiatrist, shows that his diagnosis of a severe episode of a recurrent major depressive disorder was made in 2016, more than 2 years prior to the events at issue in this lawsuit, and has remained unchanged since then. (Christo Dep. 43:2-14; 71:2-12; 73:18-23.)[2] Dr. Christo described the progression of Plaintiff's illness as "up and down" over the course of his treatment and said that Plaintiff was "about the same" as when he began treating him in 2015. (Christo Dep. 25:17-15.)

Plaintiff did not report any actions specifically by Cenlar to Dr. Christo. Although he reported negative impacts from the 2019 foreclosure, he also reported numerous traumatic or stressful events that are unrelated to the events in this lawsuit, including being car-jacked at knifepoint; the death of loved ones, including Mr. Jones' mother in 2018; being burned as a child;

---

[2] Dr. Christo's deposition has been designated as confidential by Plaintiff and is being filed with a separate Motion to Seal.

a fire in his home; and chronic illness and pain, among other events. (Christo Dep. 37:13-25; 41:14-42:5,14-18; 45:23-46:14; 52:4-14; 57:9-15; 64:7-12; 76:12-77:3; 78:11-17.)

The medical records thus do not corroborate Plaintiff's conclusory allegations that his emotional condition was demonstrably aggravated by the events in the lawsuit. At most, they reflect that Plaintiff reported a negative impact on his emotions from the foreclosure, but not a diagnosable or demonstrable illness that went beyond his pre-existing mental health conditions. This evidence does not suggest "probability" of causation as required by *Sakaria*. *See* 8 F.3d at 173. Indeed, the severity of Plaintiff's condition since at least 2015 (including a 100% disability rating from Social Security), combined with testimony from Dr. Christo that Plaintiff's overall condition is unchanged since that time, strongly indicates that his present condition does *not* result from the events in the lawsuit. As in *Faulkner,* Plaintiff's past history of depression and anxiety and the continuity of his diagnosis precludes a causal connection between the Defendants' actions and Plaintiff's alleged injuries. *See* 552 F. Supp. 2d at 558. Accordingly, the Court should grant partial summary judgment as to Plaintiff's damages arising from emotional distress.

## II. Plaintiff's alleged damages arise from his default on the loan, not Cenlar's actions

All of Plaintiff's purported damages in this action appear to arise from the foreclosure of the Property. *See* **Exhibit 1**, Plaintiff's Responses to Cenlar's Interrogatories, Nos. 8 and 9. The foreclosure, however, arises out of Plaintiff's default on the loan as found by the Mecklenburg County Clerk of Superior Court in its Findings and Order and is not proximately caused by any actions of Cenlar.

Courts have recognized that a party cannot sue for damages arising from a foreclosure that is attributable to the plaintiff's default on the loan, rather than the actions of defendants. The facts of this case are closely analogous to *Myrlie v. Countrywide Bank*, in which the court rejected a

11

plaintiff's argument that the foreclosure of his home and associated damages were caused by a lender's failure to honor a promise to modify his loan. 775 F. Supp. 2d 1100, 1109 (D. Minn. 2011). As the *Myrlie* court stated, "The foreclosure was permitted by the parties' loan agreement. The foreclosure was caused by Plaintiff's inability to make payments pursuant to the loan agreement. The loan modification was a way to avoid foreclosure. Thus, the absence of a loan modification agreement is not a cause of foreclosure." *Id*; *see also Collins v. Wickersham*, 862 F. Supp. 2d 649, 659 (E.D. Mich. 2012) (finding that "[t]he alleged injuries plainly resulted from Plaintiffs' failure to make loan payments and the ensuing foreclosure," rather than alleged RESPA violations); *Randall v. Bank of Am. N.A.*, No. 1:14-CV-2981-TCB-ECS, 2015 WL 11978533, at *4 (N.D. Ga. May 28, 2015) ("To the extent Plaintiffs' alleged damages of 'severe emotional distress and anger and sadness' were caused by the foreclosure sale itself, such allegation would not sustain a claim for wrongful foreclosure because the foreclosure sale in this case was attributable to Plaintiffs' default on the loan." (internal citations omitted)), *report and recommendation adopted*, No. 1:14-CV-2981-TCB, 2015 WL 11978463 (N.D. Ga. Sept. 11, 2015).

On February 18, 2019, the Mecklenburg County Clerk of Superior Court conducted a hearing pursuant to N.C.G.S.§ 45-21.16 and found that First Citizens was entitled to foreclose on the property due to Plaintiff's default on the loan. Plaintiff did not appeal from this order. The Clerk's order is issue-preclusive as to any dispute over whether Plaintiff was in default and whether First Citizens was permitted to foreclose under North Carolina law. "Any issue that the clerk decides in a foreclosure proceeding under N.C. Gen. Stat. § 45-21.16(d) is conclusive unless appealed and reversed and cannot be relitigated in a subsequent lawsuit." *Vicks v. Ocwen Loan Servicing, LLC,* No. 3:16-CV-00263-FDW, 2017 WL 2490007, at *2 (W.D.N.C. June 8,

2017), *aff'd*, 704 F. App'x 241 (4th Cir. 2017).  The Substitute Trustee carried out the foreclosure sale as permitted by the Clerk's foreclosure order.  Plaintiff's damages in this case thus arise from his default on the loan, and not from any action or inaction by Cenlar.

### III. Plaintiff's RESPA and negligence claims fail because Plaintiff has not shown a violation of RESPA

Plaintiff alleges that Cenlar violated RESPA by engaging in "dual tracking" of his loss mitigation application and the foreclosure.  Plaintiff's negligence claim is also founded on the purported violation of the regulations implementing RESPA.  Plaintiff cannot show a violation of RESPA, however, because he did not provide a complete loss mitigation application to Cenlar more than 37 days prior to the foreclosure sale, and the relevant CFPB rules therefore did not require him to be substantively evaluated for a decision on his loss mitigation application prior to the foreclosure.

The regulation implementing RESPA's loss mitigation requirements, 12 CFR § 1024.41, recognizes that an application submitted by a borrower will often be missing documents and distinguishes a "complete" loss mitigation application from one that requires additional supporting documents or information.  *See* 12 CFR §1024.41(c).  The regulation also recognizes that a servicer may make an initial determination that a loan is "facially complete" but later determine that additional documents are required.  *Id.* at 1024.41(c)(iv).  Accordingly, the servicer may request additional documents from the borrower prior to evaluating the borrower for a modification, provided it gives the borrower a reasonable time to comply.  *See id.*  Only if a borrower submits a *complete* application more than 37 days in advance of a foreclosure sale is the servicer required to make a decision on the merits of the application.  12 C.F.R. § 1024.41(g).

The regulations define a "complete" loss mitigation application as one for which the servicer has received "all the information that the servicer requires from a borrower in evaluating

13

applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1). In its Official Bureau Interpretations of the regulation, the Consumer Financial Protection Bureau (CFPB) has explained that a servicer "has flexibility to establish its own application requirements and to decide the type and amount of information it will require from borrowers applying for loss mitigation options." 12 C.F.R. Pt. 1024, Supp. I. Thus, pursuant to both the plain language of the regulation and the CFPB's official interpretation, a servicer "has the discretion to decide what applications it considers to be 'complete.'" *Mastin v. Ditech Fin., LLC*, No. 3:17CV368, 2018 WL 524871, at *8 (E.D. Va. Jan. 23, 2018).

In accordance with the foregoing authority, as a necessary predicate to her claims, Plaintiff must show that he provided all documents required by Cenlar more than 37 days prior to the March 18, 2021 foreclosure sale. Plaintiff cannot make this showing, however, because it is undisputed that Plaintiff did not return a First Citizens financial form required to review his application. *See* Affidavit at ¶¶ 17-18.

Plaintiff also fails to state a claim for Cenlar's alleged failures to respond to purported "qualified written requests" ("QWRs") under RESPA. Plaintiff has not alleged, and cannot show, that the purported QWRs were addressed the "servicing" of his loan within the meaning of 12 USC § 2605, or that his correspondence was sent to the address designated by Cenlar for such requests under 12 CFR 1024.35(c) and 1024.36(b). Furthermore, Plaintiff has not identified how Cenlar's responses to his letters were deficient. Plaintiff's chief complaint is that the Property was foreclosed. First Citizens was in fact entitled to foreclose on the property pursuant to the Clerk of Superior Court's February 18, 2019 order, and Cenlar was neither required nor able to unwind the foreclosure in response to Plaintiff's letters.

Plaintiff's negligence claim is also predicated on the allegation that Cenlar violated the requirements of 12 CFR § 1024.41. Because Plaintiff cannot establish facts necessary to show a violation of RESPA, his negligence claim likewise fails as a matter of law.

## IV. Plaintiff's claim for negligent misrepresentation fails because this claim cannot be predicated on a promise of future conduct

Plaintiff's negligent misrepresentation claim is predicated on Cenlar's March 5, 2019 notice stating that his application received February 27, 2019 was facially complete and would be reviewed within 30 days. This notice was in the form used for compliance with 12 CFR § 1024.41(c)(3)(i) requiring certain disclosures after an initial determination that an application is complete; however, because the application was received less than 37 days prior to the foreclosure sale, this notice was not in fact required to be sent by the regulation. Contrary to Plaintiff's allegations, Cenlar's notice did not promise that the March 18, 2021 foreclosure sale of which Plaintiff had been notified would be canceled or postponed, nor was it reasonable for Plaintiff to believe that such a postponement had occurred.

Even if Cenlar's March 5, 2021 letter can be construed as a promise to cancel or postpone the foreclosure sale, this is not actionable as a negligent misrepresentation. Under North Carolina law, a misrepresentation requires a false statement of existing fact, and promises of future conduct generally are not actionable. *See Gen. Elec. Capital Bus. Asset Funding Corp. v. Golden Corral Corp.*, 24 F. App'x 189, 194 (4th Cir. 2001) (affirming summary judgment on negligent misrepresentation claim under North Carolina law where the relevant statement "was not a representation of fact but at most a promise to act in the future.").

## V. Plaintiff has not alleged any improper "debt collection" by Cenlar for purposes of the NC Debt Collection Act.

For his claim under the NC Debt Collection Act ("NC Debt Collection Act"), Plaintiff asserts violations of NCGS § 75-51 (threats and coercion), 75-54 (deceptive representations), and 75-55 (unconscionable means) based on Cenlar's communications in connection with Plaintiff's loss mitigation application, including the March 5, 2019 letter advising Plaintiff that his application was initially considered complete and would be reviewed within 30 days. Each of the statutes cited by Plaintiff addresses efforts to "collect or attempt to collect a debt."

"Debt" means "any obligation owed or due or alleged to be owed or due from a consumer." N.C. Gen. Stat. Ann. § 75-50. "Collect," however, is not defined in the statute. Nor does there appear to be any North Carolina case addressing whether communications sent by a servicer in an effort to comply with CFPB loss mitigation rules, such as the notices acknowledging receipt of a facially complete application at issue in this case, constitute debt collection under the NC Debt Collection Act. In the absence of controlling precedent regarding the meaning of the Act, "cases construing the parallel federal statute [under the Fair Debt Collection Practices Act are] instructive, though not binding." *Reid v. Ayers*, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000).

Courts construing the Fair Debt Collection Practices Act and analogous state consumer protection statutes have concluded that a servicer's activities related to loss mitigation are generally not "debt collection" in the absence of a demand for payment. In *Farquharson v. Citibank, N.A.,* , the Eleventh Circuit found that a letter offering a modification upon completion of trial payments was not debt collection where it did not "demand or even request that Plaintiffs make any payments" and "did not indicate that any punitive actions would be taken if Plaintiffs failed to make payments, nor did it describe any collection efforts apart from the [trial plan] itself." 664 F. App'x 793, 802 (11th Cir. 2016); *see also Heinz v. Carrington Mortg. Servs., LLC*, 3 F.4th

16

1107, 1113 (8th Cir. 2021) (a false statement regarding the plaintiff's application for loss mitigation assistance was not made in connection with the "collection of a debt" where it "included no discussion of the loan, its terms, any amount due, or any request or demand for payment."). In *Spoor v. PHH Mortgage Corp.* the Court found that a servicer's evaluation of a modification was not the collection of a debt under the West Virginia Consumer Credit and Protection Act because it did not involve the receipt of payment:

> Accepting the plain meaning of the statute, this Court finds that the defendant's evaluation of a loan modification request does not involve the collection of a debt. Although the plaintiff equates all activities occurring in connection with servicing a mortgage loan with debt collection, this is not the case. To "collect" means "to claim as due and receive payment for." *Webster's Ninth New Collegiate Dictionary* 259 (9th ed.2009). By definition, the receipt of a payment is essential to a collection. But no payment is received in connection with simply considering a loan modification.

No. 5:10CV42, 2011 WL 883666, at *7 (N.D.W. Va. Mar. 11, 2011); *see also Fields v. JP Morgan Chase Bank, N.A.*, 638 F. App'x 310, 314 (5th Cir. 2016) (finding that under the Texas Debt Collection Act, "communications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its modification" (internal quotations omitted)).

In light of the foregoing cases, Cenlar's communications with Plaintiff acknowledging the receipt of a facially complete application and providing the information specified in 12 CFR§ 1024.41(c)(3)(i), including its March 5, 2019 letter, are plainly not attempts to "collect a debt." The notices contain information about the loss mitigation process and do not demand payment or threaten consequences for non-payment. Furthermore, although the notices contain so-called "mini-Miranda" warnings stating that "this is an attempt to collect a debt," such warnings are not dispositive; rather, it is the substance of the communication that determines if it is in fact an attempt at debt collection. *See Heinz v. Carrington Mortg. Servs., LLC*, 3 F.4th 1107, 1114 (8th Cir. 2021). Because the communications on which Plaintiff's NC Debt Collection Act claim is allegedly

founded do not involve an attempt to collect a debt, Cenlar is entitled to summary judgment on this cause of action.

## VI. Plaintiff cannot demonstrate facts supporting an award of punitive damages

Pursuant to N.C. Gen. Stat. Ann. § 1D-15, punitive damages may only be awarded when the defendant is liable for compensatory damages and either fraud, malice, or willful or wanton conduct is present. "Malice" means a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant. N.C. Gen. Stat. Ann. § 1D-5. "Willful or wanton conduct" means "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm" and is "more than gross negligence." N.C. Gen. Stat. Ann. § 1D-5.

Additionally, punitive damages "shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another." N.C. Gen. Stat. Ann. § 1D-15. Such damages may be awarded against a person "only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." *Id*.

Plaintiff has not alleged, and cannot show, any conduct rising to the level required to support a punitive damages award. At worst, Plaintiff has alleged a mistake by Cenlar in sending a facially complete notice that under CFPB Rules would have been required to be sent had Plaintiff's application been received several weeks earlier, but was *not* required under the regulation because the application was received less than 37 days prior to the foreclosure sale. *See* 12 CFR 1024.41(c)(3). There is no evidence of any ill will or intentional disregard for Plaintiff's

18

rights or safety. Furthermore, Plaintiff has not shown that any "officer, manager, or director" of Cenlar participated in or condoned any such conduct. Because Plaintiff has not shown activities supporting punitive damages nor a predicate for holding Cenlar as a banking entity responsible for such conduct, summary judgment should be granted in Cenlar's favor as to punitive damages.

## CONCLUSION

For the reasons set forth above, Cenlar requests that the Court grant summary judgment in its favor as to each of the causes of action in the Complaint. In the alternative, should the Court decline to grant summary judgment as to one or more claims, Cenlar requests that the Court grant partial summary judgment as to Plaintiff's alleged damages for emotional distress, other damages purportedly arising from the foreclosure, and punitive damages.

Respectfully submitted, this the 30th day of September, 2021.

/s/ G. Benjamin Milam
G. Benjamin Milam, Esq. [NC Bar No.45483]
**Bradley Arant Boult Cummings LLP**
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Telephone: (704) 338-6049
Facsimile: (704) 332-8858
bmilam@bradley.com

*Attorneys for Cenlar FSB*